IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLA JEAN SHANNON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No.: 4:12-CV-01400 |
| | § | |
| CAROLYN W. COLVIN[1] | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge[2] in this social security appeal is Defendant's Motion for Summary Judgment and Memorandum in Support (Document Nos. 17 & 18), and Plaintiff's cross Motion for Summary Judgment, Memorandum in Support, and Response (Document Nos. 16 &19). Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner is AFFIRMED.

### I. Introduction

Plaintiff Carla Jean Shannon brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted for Michael J. Astrue as the defendant in this action.
[2] The parties consented to proceed before the undersigned Magistrate Judge on September 5, 2012. (Document No. 13).

for social security income ("SSI") benefits. Shannon contends that the Administrative Law Judge ("ALJ") erred in not finding her disabled due to depression. Shannon further contends that substantial evidence does not support the ALJ's determination that her degenerative disc disease did not meet or equal a listed impairment. She also claims that substantial evidence does not support the ALJ's RFC assessment. Shannon seeks an order reversing the Commissioner's final decision and awarding benefits, or in the alternative, an order remanding this case for further proceedings. The Commissioner responds that the ALJ correctly applied the law and that substantial evidence supports the ALJ's determination. The Commissioner, therefore, requests that the ALJ's decision be affirmed.

## II. Administrative Proceedings

On August 26, 2009, Shannon applied for SSI benefits, claiming, since April 30, 2008, an inability to work due to pain in her neck and shoulder, and depression. (Tr. 125-131). The Social Security Administration denied Shannon's claim initially and on reconsideration.  (Tr. 76, 83). Shannon then requested a hearing before an ALJ. (Tr. 86-87). The Social Security Administration granted her request and the ALJ, Daniel E. Whitney, held a hearing on November 1, 2010, at which Shannon's claims were considered *de novo*. (Tr. 41-72). On December 28, 2010, the ALJ issued a decision finding Shannon not disabled. (Tr. 22-28).

On January 12, 2011, Shannon sought review of the ALJ's unfavorable decision with the Appeals Council. (Tr. 18). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. §404.970; 20 C.F.R. §416.1470. On February 22, 2012, the

Appeals Council sent notice of their denial of Shannon's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4).

Shannon filed a timely appeal of the ALJ's decision. Both the Commissioner and Shannon have filed Motions for Summary Judgment (Documents Nos. 16 &17). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 338. There is no dispute as to the facts contained therein.

### III. Standard of Review of Agency Decision

The Court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. §405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision." *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the

evidence are for the Commissioner to resolve. *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Spillman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)(quoting *Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir. 1973)).

### IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986).

> The Commissioner applies a five-step sequential process to determine disability status:
>
> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ determined, in his December 28, 2010, decision, that Shannon was not disabled at step five. At step one, the ALJ determined that Shannon was "not engaged in substantial gainful activity" at the time she applied for benefits. (Tr. 24). At step two, the ALJ determined that Shannon's degenerative disc disease was a severe impairment, but that her depression was not a severe impairment. At step three, the ALJ found that Shannon's degenerative disc disease did not meet or equal a listed requirement in Appendix 1 of the Regulations. The ALJ found that Shannon did not meet or equal listing 1.04 A, which requires "nerve root compression or significant limitation in range of motion, muscle weakness, and sensory and reflex loss." (Tr. 25). Next, the ALJ determined that Shannon had the RFC to perform light work limited to the extent that she could do frequent handling and reaching with her right arm. (Tr. 25-26). At step four, the ALJ determined that Shannon was unable to perform any past work. (Tr. 26). Finally, at step five, the ALJ determined that the claimant can perform other work and was not disabled. (Tr. 27-28).

In this appeal, the Court is asked to determine whether the ALJ's determination that Shannon's depression is not severe was improper, whether the ALJ's determination that Shannon's degenerative disc disease does not meet or equal the listed impairment is supported by substantial evidence and whether the ALJ's RFC determination is supported by substantial evidence.

In determining whether substantial evidence supports the ALJ's decision, the court weighs factors: (1) the objective medical facts; (2) the diagnosis of expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V. Discussion

### A. Objective Medical Facts

On May 2, 2008, Shannon visited a neurologist, Cheor Kim, M.D., after experiencing pain in her neck, right shoulder, and right arm. Dr. Kim stated that Shannon was "probably suffering from cervical radiculopathy of right C7-C8 nerve root distribution" and ordered an x-ray and an MRI of her spine. (Tr. 284). He prescribed Tramadol for the pain. (Tr. 227). The x-ray, taken on May 21, 2008, showed a normal spine. (Tr. 285). Shannon's MRI, also taken on May 21, 2008, showed "[t]here is mild dehydration of the disks with desiccation of the disk at C5-6 and C6-7 where there is mild narrowing of the interspaces" and "[a]t C4-C5 where there is a focal bulge that lies adjacent to the anterior thecal sac and two broad-based bulges at C5-C6 and C6-C7 also lie adjacent to the thecal sac. There is no apparent severe narrowing of the neural foraminal canals." (Tr. 288). On July 7, 2008, Dr. Kim noted that Shannon was improving. (Tr. 280). On September 29, 2008, Dr. Kim noted that Shannon experienced a "moderate limit of range of motion." At Shannon's next appointment, on January 9, 2009, Shannon reported that her pain "tends to recur with minor physical activity." (Tr. 273, 246). On February 20, 2009, Dr. Kim wrote that Shannon was "doing reasonably well with current medications." (Tr. 245).

On December 9, 2009, after applying for social security benefits, Shannon visited Amin H. Karim, M.D. for an internal medical consultation. (Tr. 292-97). During the consultation, she reported neck pain that radiated down to her right arm, right hand and fingers. She also reported an inability to relax or sleep, a tendency to worry a lot, feelings of depression and stress, headaches, exhaustion and fatigue, and changed handwriting. (Tr. 292-93). Based on his examination, Dr. Karim opined that Shannon's chest pains were musculoskeletal in nature, that she had chronic cervical spondylosis and that she needed to correct her vision. Dr. Karim wrote:

Patient can do work activities such as sit, stand, move about, lift, carry, handle objects, finger, feel, hear and speak. Patient is able to speak distinctly and to sustain intelligible conversation in normal office setting. Patient can speak in complete sentences; There is no scarring, contractures, deformities and functional restrictions; There is no persistent disorganization of motor function in any of the extremities; There is no clinical evidence of wasting, fatigue or shortness of breath; Strength, coordination, dexterity of the hands and fingers is maintained without loss of motion; patient can button clothes, tie shoes and pick up a pen; Patient did not demonstrate any mental changes or emotional lability during the present exam; Patient can AMBULATE effectively without assistive devices such as cane or crutch; There was no visible SHORTNESS OF BREATH on ordinary exertion. Patient needs medical followup. There is NO evidence on clinical exam of back spasm, loss of motion, atrophy, motor, sensory and reflex abnormalities in a radicular distribution. Spine has normal range of motion without impact on gait or station. Patient maintains sense of soft touch, pain, pressure and temperature in both upper and lower extremities; CHEST PAIN is precipitated by exertion and emotional stress; It may be angina pectoris or associated with increased heart rate due to stress response. Muscle inflammation, spasm, gastro-esophageal reflux, gall bladder disease can masquerade as chest pain of cardiac origin. Patient CAN hold and pen write legibly and filled out the New Patient Questionnaire; Level of pain is more than the physical findings; CERVICAL SPINE MOTIONS ARE NORMAL IN ALL DIRECTIONS. (Tr. 295).

Dr. Karim ordered an x-ray of the cervical spine. The x-ray showed "mild interior steophyte formation and minimal loss of disc space height at C5-6 and C6-7. No fracture is seen. No focal bony mass lesion. Cervical Spine alignment is within normal limits. The prevertebral soft tissues are unremarkable. The other soft tissues of the neck are unremarkable." The radiologist opined that Shannon had "mild degenerative disc and degenerative joint changes." (Tr. 297).

On December 21, 2009, Frederick Cremona, M.D., a disability determination unit physician, reviewed Shannon's records and completed a physical Residual Functional Capacity Assessment. (Tr. 298-315). He opined that Shannon could frequently lift ten pounds, occasionally lift twenty pounds, stand or walk for six hours out of an eight hour workday, sit for six hours out of an eight hour workday, and push or pull. Shannon had no postural, manipulative, visual, communicative or environmental limitations. (Tr. 298-305).

On March 8, 2010, Shannon visited MHMR Authority of Harris County for a psychiatric evaluation by Juan Cruz, L.P.C. (Tr. 309-320). There, Shannon stated that she felt anxiety, worried a lot, felt depressed almost half of the time, experienced loss of energy, felt hopeless and worthless, had trouble concentrating, and often felt irritable. (Tr. 309). The results of Shannon's mental status exam revealed that she was cooperative and polite; she had normal gait and posture; she was soft-spoken and spoke at a normal volume; her mood was sad and her affect was mood congruent. Her insight and judgments were fair. Shannon's thought process was goal oriented and logical. She was oriented to person, place, time, and situation. Shannon's intellectual functioning was below average. Shannon was alert and clear. Based on the above results, the evaluator wrote: "psychiatric symptoms appeared very mild." (Tr. 317). She was given a preliminary diagnosis of depressive disorder. (Tr. 317). She had a GAF score of 60. (Tr. 319).

According to the ALJ's decision, Shannon did not meet or exceed the requirements of listing 1.04 A. To meet this listing, Shannon must show that she has:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Part 4, Subpt. P, App. 1, § 1.04.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Shannon argues that the ALJ erred in finding that her cervical radiculopathy causing neck, shoulder, and arm pain didn't meet or equal listing 1.04A. According to Shannon, Dr. Kim's clinical findings, the results of her May 21, 2008, MRI and her own testimony about weakness, numbness, tingling and cramping in her right arm and hand, limited movement in turning her head to the right and moving it up and down, limited movement in her right arm, which can no longer be raised above her shoulder, a limited range of motion, motor loss and sensory loss demonstrate that she had nerve root compression.

The Commissioner contends that Shannon did not meet or equal Listing 1.04A because she did not meet *all* the criteria of the listing. For example, there was no medical evidence of nerve root compression in the May 2008 MRI, and the May 2008 and December 2009 x-rays showed only mild degenerative changes. Moreover, the exam performed on December 9, 2009 by Dr. Karim showed that Shannon walked with normal gait, had a normal range of motion in all directions and normal muscle strength in her upper extremities. Upon this record, substantial evidence supports the ALJ's determination that Shannon did not meet or equal listing 1.04A.

Next, Shannon argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to accept as true all of Shannon's complaints regarding her right arm and hand, and limited her to frequent, as opposed to constant, use of her right hand. Upon this record, the ALJ's RFC assessment is supported by substantial evidence. The ALJ relied on Dr. Karim's examination, which undercut Shannon's suggestion that she has limited use of her right arm and hand. Dr. Karim wrote:

> Patient can do work activities such as sit, stand, move about, lift, carry, handle objects, finger, feel, hear and speak… There is no persistent disorganization of motor function in any of the extremities;… Strength, coordination, dexterity of the hands and fingers is maintained without loss of motion; Patient can button clothes, tie shoes and pick up a pen… Patient CAN hold and pen write legibly and

filled out the New Patient Questionnaire… CERVICAL SPINE MOTIONS ARE NORMAL IN ALL DIRECTIONS. (Tr. 295).

Shannon also contends that the ALJ incorrectly applied the standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1992). According to this standard, "an impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* However, "it is well-established law that a case will not be remanded simply because the ALJ did not use 'magic words' … when an ALJ has cited conflicting severity standards but the decision as a whole makes clear that the ALJ did, in fact, use the appropriate severity standard." *Andrews v. Astrue*, No. 4:11-CV-733-Y, 2013 WL 127211, at *6 (N.D.Tex.).

Here, Shannon's symptoms "appeared very mild." (Tr. 317). Although Shannon testified to feeling depressed for twelve years, she stated at the hearing that she has never sought treatment for her depression. (Tr. 54). There is substantial evidence in the record to support the ALJ's determination that Shannon's depression was not severe at step two. The ALJ considered Shannon's alleged mental impairment under Listing 12.00C and found that in the four broad functional areas known as the "paragraph B" criteria, Shannon had only mild limitations in activities of daily living, social functioning, and concentration, persistence or pace. She had no episodes of decompensation of extended duration.

Shannon argues that the ALJ erred in not giving appropriate weight to her GAF score of 60. The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (4th ed. Rev. 2000) (DSMV-IV). The GAF scale is divided into ten

different ranges. *Id.* at 34. Each ten-point range has two components. The first part addresses the severity of the symptoms, and the second part addresses the functioning of the patient. *Id.* A person with a GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Federal courts have declined to find a link between a claimant's GAF score and his ability to work. *See* 65 Fed. Reg. 50746, 5076465 (August 21, 2000) (declining to endorse the GAF scale for use in Social Security and SSI disability programs and stating that the GAF "does not have a direct correlation to the severity requirements in our mental disorders listings"); *see also, Kennedy v. Astrue*, 247 F.App's 761, 766 (6th Cir. 2007); *Wind v. Barnart*, 133 F.App'x 684, 692 n.5 (11th Cir. 2005); *Andrade v. Astrue*, No. 4:11-CV-318-Y, 2012 WL 1106864, at *8 (N.D. Tex. Feb. 13, 2012), *adopted in* 2012 WL 1109476 (N.D. Tex. Apr. 2, 2012). Shannon's GAF score was not accompanied by any findings as to any social or occupational limitations.

Here, upon this record, substantial evidence supports the ALJ's finding that Shannon's mild degenerative disc disease is a severe impairment at step two, that this impairment at step three, individually or in combination, did not meet or equal a listed impairment, and that she had the RFC to perform light work limited to frequent handling and reaching with the right upper extremity. In addition, substantial evidence supports the ALJ's finding that Shannon's depression was not a severe impairment.

## B. Diagnosis and Expert Opinion.

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially

when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schwwiker*, 660 F.2d 1078 (5th Cir. 1981). Indeed, "[a] treating physician's opinion on the nature of a severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with … other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Id.* "'[T]he Commissioner is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez*, 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Further, regardless of the opinions and diagnosis of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

The Social Security Regulations provide a framework for the consideration of medical opinions. Under 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6), consideration of a physician's opinion must be based on:

> (1) the physician's length of treatment of the claimant,
>
> (2) the physician's frequency of examination,
>
> (3) the nature and extent of the treatment relationship,
>
> (4) the support of the physician's opinion afforded by the medical evidence of record,
>
> (5) the consistency of the opinion with the record as a whole, and

(6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456. While opinions of treating physicians need not be accorded controlling weight on the issue of disability, in most cases such opinions must at least be given considerable deference. *Id.* Again, the Social Security Regulations provide guidance on this point. Social Security Ruling 96-2p provides:

> [A] finding that a treating source of medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling (SSR) 96-2p Fed. Reg.34490 (July 2, 1996). With regard to the weight to be given "Residual Functional Capacity Assessments and Medical Source Statements," the Rule provides that "adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 … providing appropriate explanations for accepting or rejecting such opinion." *Id.*

The Fifth Circuit adheres to the view that before a medical opinion of a treating physician can be rejected, the ALJ must consider and weigh the six factors set forth in 20 C.F.R. § 404.1527(d). *Newton*, 209 F.2d at 456. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 455; *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). However, perfection in administrative proceedings is not required. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1998).

In sum, the thoroughness of the ALJ's decision shows that he carefully considered the medical records and testimony, and that his determination reflects these findings accurately. The ALJ summarized the evidence and set forth specific reasons concerning the weight given to the opinions of the medical sources.

## C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'consistent, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Shannon testified that she is unable to work because of pain. (Tr. 53). She offered no testimony or corroboration from her family or friends with respect to her complaints about her condition. Shannon testified that she experiences pain in her neck and right arm and numbness in her right hand and fingers. (Tr. 53-54). Her range of motion is limited and, as a result, she cannot turn her head, drive a car, use a curling iron, or dress herself. (Tr. 53-54, 64-66). According to Shannon, her pain medications and tens unit do not alleviate her pain. (Tr. 63, 65). Also, the pain medications make her drowsy, dizzy, and light-headed. She rests several hours a day. (Tr. 63-64). She also stated that for the past twelve years she has been depressed. However, she has never sought treatment for it. (Tr. 54). Based on the reasons which follow, the ALJ rejected Shannon's allegations of disabling pain as not fully credible:

> The claimant testified with a neck brace on and with her eyes closed. She stated that she was unable to work due to pain in her neck and right shoulder that radiates down her right arm. Her pain medication makes her sleepy but does not help alleviate the pain. She stated that she spends 4-6 hours lying down during the day. She stated that she does not drive. However, she stated that she has difficulty with her right arm/hand in gripping or inserting keys in an ignition. She stated that she has difficulty curling her hair and dressing. Her doctor has suggested physical therapy to help her raise her arm above shoulder level. She cannot hold her head in a fixed position even though she uses a neck brace.

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> Turning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported in the residual functional capacity assessment above. March and September 2009, office visits with neurologist Cheor J. Kim, M.D., noted the claimant was functioning reasonably well with current medications (Exhibit 1F/2-3). During a December 2010, internal medicine consultative evaluation, the claimant reported pain in the neck radiating down her right arm and fingers. However, the examiner, Amin H. Karim, M.D., indicated that his examination revealed that the claimant could do work activities such as

sit, stand, move about, lift, carry, handle objects, finger, feel, hear, and speak. Dr. Karim also noted no functional limitations and no persistent disorganization of motor function in any of the extremities. The claimant's strength, coordination, and dexterity of the hands and fingers were maintained without loss of motion. She was able to tie shoes, button clothes, and pick up a pen. She could ambulate effectively without assistive devices such as a cane or crutch. There was no evidence on clinical exam of back spasm, loss of motion, or atrophy. The spine had normal range of motion without impact on gait or station. The level of pain was more than the physical findings. X-rays of the cervical spine revealed only mild degenerative disc and degenerative joint changes (Exhibit 2F).

A review of the evidence does not fully support the degree of pain and limitation alleged by the claimant. While the claimant testified to significant pain, she also indicated that her medications helped alleviate her pain. Although she testified that her medications make her sleepy, her sleepiness was not enough of a problem to report to her physicians. She also testified to very few daily activities but has not documented that any doctor has requested she restrict her activities. In fact, her alleged limitations regarding standing, sitting, and walking are not fully credible to the extent alleged. Instead, greater weight is given the objective medical evidence in determining the claimant's residual functional capacity. (Tr. 25-26).

There is nothing in the record to suggest that the ALJ made improper credibility findings, or that he weighed the testimony improperly. The ALJ noted inconsistencies between Shannon's testimony concerning her pain, and her medications not working, and making her sleepy and with what she had told her physician. The ALJ found Shannon not credible regarding her daily activities. The ALJ to considered inconsistencies between Shannon's hearing testimony and the objective medical evidence when evaluating her credibility. *See* SSR 96-7p, 1996 WL 374186, at *5 ("one strong indication of the credibility of an individual's statements is there consistency, both internally and with other information on the case record."). Accordingly, this factor also supports the ALJ's decision.

## D. Education, Work History, and Age

The final element to be weighed is the claimant's educational background, work history and present age. A claimant will be determined to be under disability only if the claimant's

physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The record shows that Shannon, at the time of the hearing, was forty-three years old, and had a GED. The ALJ questioned Vicki Culemborg, a vocational expert ("VE"), at the hearing about Shannon's ability to engage in gainful work activities. "A vocational expert is called to testify because of his familiarity with the job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling,* 36 F.3d at 436.

The ALJ posed the following hypothetical questions to the VE:

Q: Ms. Culemborg, for all hypotheticals, assume a person of the same age, education and work history as the claimant. Assume a person limited to sitting for six hours, standing/walking for six hours, ability to lift and carry 50 pounds occasionally and 25 pounds frequently. Would a person with those limitations be able to perform any of the claimant's past work?

A: Yes, Your Honor. She would be able to perform all three jobs. Home health – I mean nursing home worker, mail handler and assembler.

Q: If I added the additional limitations of frequent handling and reaching in the right upper extremity, how does that affect the availability of those jobs?

...

A: It would probably affect the job of the assembler and the mail handler.

Q: They would not be available?

A: They would not be available.

Q: But the nursing aide will still be available?

A: Yes

Q: Assume a person limited to sitting for six hours, standing/walking for six out of – able to lift and carry 20 pounds occasionally, ten pounds frequently. Also include the limitations on the right upper extremity, frequent handling and reaching. Based on these limitations would such a person be able to perform any of the past work?

A: No, Your Honor.

Q: Would there be other work available to a person with those limitations?

A: Yes, sir.

Q: Give us examples, please.

A: Okay. Office helper. 1,000 in the local economy, over 190,000 nationally. A child attendant. 1600 in the local economy, over 200,000 nationally. And a photocopy machine operator, 700 in the local economy and 165,000 nationally.

Q: And what's the exertional level of those jobs?

A: Light unskilled.

Q: If I added the additional limitations of able to understand, remember and carry out simple instructions, make judgments [inaudible] work related decisions. How would that affect those jobs?

A: It would not, Your Honor.

In addition, Shannon's counsel questioned the VE.

Q: Assume, ma'am, that the hypothetical individual would have to lay down two to three hours per day during a normal eight hour workday. Would there be any jobs in the national economy such an individual could perform?

A: No, sir. She wouldn't be competitive.

Q: And a second hypothetical, totally different. Assume that the hypothetical individual is right-hand dominant, cannot raise her right arm above shoulder level, cannot perform – cannot perform fine manipulation or gross manipulation and can lift five to six pounds in the right – in the dominant right hand, but movement on the use of the right hand causes pain, so the movement is very, very limited. Would she be able to – and there is not limitation on the left hand – left arm. Would she be able to perform a prior relevant work?

A: Her prior jobs?

Q: Her prior jobs. Any of them.

A: No, sir.

Q: And I'd like to add to that, she could not rotate her head left or right, nor in a vertical position. Would there be any jobs in the national economy such an individual could perform? Or should I restate that?

A: Just the –

ALJ: Are you talking about the ability to move her head left and right?

ATTY: Yes. Just adding that to it, the ability to move the head from left to right.

ALJ: How far?

ATTY: She can't do it –

ALJ: Not at all?

ATTY: Cannot do it on a repetitive basis.

ALJ: Limited to looking straight forward?

ATTY: Yes. Thank you for asking that question, Your Honor. The judge's hypothetical is very clear.

VE: Okay. That would limit everything, so no, she would not. There are no jobs. (Tr. 68-71).

Here, the ALJ relied on a comprehensive hypothetical question to the vocational expert. A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Shannon argues that the ALJ's step five determination that Shannon can perform other work at the light level is internally inconsistent with the ALJ's step four determination that Shannon could not perform her past relevant work "as an assembly line worker, which is considered light unskilled work." (Tr. 25). However, a careful reading of the ALJ's decision reveals that the RFC determination is not inconsistent with his finding that Shannon could perform past relevant work as a nursing aid, but not as an assembler or mail handler. Although the ALJ initially stated that Shannon is limited to performing light work, this statement is here qualified when the ALJ states that Shannon's limitations "erode the unskilled light occupational base." (Tr. 27). The ALJ's determination that Shannon cannot perform the full range of light unskilled jobs is consistent with the vocational expert's testimony that a person with Shannon's limitations would not be able to perform the job of the assembler or mail handler, but would be able to perform the jobs of office helper, child attendant, or photocopy machine operator because of the limitation of frequent handling and reaching in the right upper extremity. (Tr. 69).

Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion that Shannon was not disabled. Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding that Shannon could perform light work with restrictions. All the jobs identified by the VE were consistent with and are types of jobs that could be performed given Shannon's RFC, age and education. Because the hypothetical questions contained all the functional limitations recognized by the ALJ, the Court concludes that the ALJ's reliance on the vocational testimony was proper, and that the vocational

expert's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that Shannon was not disabled within the meaning of the Act. Therefore, Shannon was not entitled to benefits. Further, it is clear from the record that the proper legal standards were used to evaluate the evidence presented. Accordingly, this factor also weighs in favor of the ALJ's decision.

## VI. Conclusion

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of that Shannon was not disabled within the meaning of the Act, that substantial evidence supports the ALJ's decision, and that the Commissioner's decision should be affirmed. As such, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 16), is DENIED, Defendant's Motion for Summary Judgment (Document No. 18) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED

Signed at Houston, Texas this _9th_ day of _August_, 2013.


FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE